CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

IVANA DJAK (NYBN 5516687)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3918
    FAX: (510) 637-3724
    ivana.djak@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 26-CR-191 AMO |
| Plaintiff, | ) |
| v. | ) **GOVERNMENT'S DETENTION** ) **MEMORANDUM** |
| ANDRE DUPREE, | ) Hearing Date: May 11, 2026 |
| Defendant. | ) Hon. Ajay S. Krishnan |

## I.    INTRODUCTION

Defendant Andre Dupree has a long and serious criminal history. In the present case, he is charged with being a felon in possession of a firearm and ammunition. On July 17, 2025, Oakland Police Department ("OPD") officers executed an arrest warrant for the Defendant for his role in a March 2025 burglary, and a search warrant of the Defendant's residence. In the Defendant's residence, OPD officers found a large cache of unsecured firearms and ammunition, left within the reach of children.

When the present offense conduct occurred, the Defendant was on Probation for a 2023 conviction for the burglary of a cannabis dispensary with a burglary crew. The Defendant had been sentenced to two years in jail and 18 months of probation. Notably, the March 2025 burglary for which

GOVERNMENT'S DETENTION MEMORANDUM    1
26-CR-191 AMO

OPD arrested the Defendant, involved the burglary of a gas station with a burglary crew as well.

The Defendant was also convicted for burglary in 2019, for receiving stolen property and obstructing a public officer in 2018, for burglary in 2016 and twice in 2015, for burglary twice in 2014, and for possession of drugs in 2014 and 2013. The Defendant has been arrested dozens of times since 2013, for everything from drug possession and drug trafficking, obstructing law enforcement, receipt of stolen property, to dozens of burglaries.

Many of the Defendant's convictions and arrests involved him fleeing from law enforcement and engaging in dangerous vehicle and foot pursuits. The Defendant has been on some form of probation or supervision for most of the past 13 years yet has continuously violated his probation. The Defendant is not amenable to supervision.

The Defendant is a known danger to the community and a known flight risk. He has repeatedly burglarized innocent members of the community, repeatedly fled from law enforcement, and repeatedly violated the conditions of his probation and court orders. He has demonstrated that he will continue to break the law, regardless of any conditions placed upon him. Accordingly, the government requests that the defendant be detained pending trial.

## II.    BACKGROUND

### a.    The Offense Conduct – The Defendant Possessed a Large Cache of Firearms and Ammunition

On July 17, 2025, OPD officers executed an arrest warrant for Andre Dupree for a March 2025 burglary, and a search warrant for his residence located in the 2300 block of 17th Ave. in Oakland, California. Dupree was taken into custody. Deanna Banks, and two children, aged three and ten, were at the apartment when the search was executed. Ms. Banks has no violent or firearm related criminal record, and her residence is in Fairfield, California.

A search of the 17th Ave. residence was conducted, and six assault rifles, seven loaded rifle magazines, and six loaded pistol magazines were located in duffle bags on the balcony of the bedroom labeled as "bedroom 2" by officers. Bedroom 2 contained children's items, indicating it was a children's bedroom. Two ziplock bags of loose ammunition and seven miscellaneous bags of money were also located on the balcony of bedroom 2. Loose live ammunition was recovered from the hallway

closet.  Specifically, OPD officers found:

- one semiautomatic .223 caliber Smith and Wesson M&P 15 rifle, serial number SR85986 [this firearm was reported stolen and has a short barrel];

- one semiautomatic 7.62x39mm caliber Zastava PAP M92 PV pistol, serial number M92PV030445 [this firearm has a short barrel];

- one semiautomatic 7.62x39mm caliber Poly Technologies MAK90 rifle, serial number CW-20738;

- one semiautomatic personal made AR-15 style rifle, un-serialized, loaded with ammunition [23 rounds of .223 Remington caliber ammunition];

- one semiautomatic personal-made AK-47 style rifle, un-serialized, loaded with an unknown number of ammunition [a short barrel riffle with a NIBIN[1] match to shootings in Oakland and Richmond];

- one semiautomatic personal made AR-15 style rifle, un-serialized, unloaded [a short barrel riffle with a NIBIN match to shootings in Oakland and Richmond, California];

- 5 rounds of 7.62x39mm caliber ammunition; and

- 17 rounds of .223 Remington and 5.56x45mm caliber ammunition loaded into two 5.56 caliber magazines;

- 40 rounds of 7.62x39mm caliber ammunition loaded into two 7.56 caliber magazines;

- 73 rounds of 9mm caliber ammunition, seized on or about July 17, 2025;

- 67 rounds of both .223 Remington and 7.62x39mm caliber ammunition; and

- 12 rounds of .223 Remington caliber ammunition.

Four of the six firearms are considered to be short-barreled rifles, rendering them additionally dangerous and prohibited by law.  One of the rifles reported back stolen from the registered owner.  Two of the firearms have NIBIN hits for shootings in Richmond and Oakland.

The Defendant's passport was located in the bedroom officers labeled as "bedroom 1."  A black

---

[1] The National Integrated Ballistic Information Network (NIBIN) is a U.S. forensic database managed by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) that stores, captures, and compares digital images of fired cartridge cases found at crime scenes.

GOVERNMENT'S DETENTION MEMORANDUM     3
26-CR-191 AMO

android phone and five bags of money were located in bedroom 1. Two iPhones were separately located in Ms. Bank's purse.

Ms. Banks was mirandized and interviewed. She reported that she does not live at apartment, she lives in Fairfield with her children. She was visiting Dupree that day as they are in a relationship. In the Pretrial Services Bail Report, Ms. Banks lists a residence in Fairfield. Ms. Banks stated that the firearms were not hers and she did not know of any firearms in the apartment. She stated that friends had visited during her stay, but not come into the residence.

The Defendant was also mirandized and interviewed. He admitted to staying at the 17th Ave. apartment with his children for the previous few weeks, and noted that he had another residence on Dimon St. in Oakland that was too crowded. He stated that nobody else besides him and his children was staying at the residence, but he also said he was not on the lease for the apartment.

The apartment is registered to Cynthia Dupree, the Defendant's mother. There was no evidence found at the apartment suggesting that Ms. Dupree resides at the 17th Ave. apartment. And in the Pretrial Services Bail Report, Ms. Dupree reports residing at another residence on Porter St. in Oakland.

A review of the Defendant's phone pursuant to a search warrant also revealed that he referred to the 17th Ave. apartment as his residence repeatedly and over many months—he instructed people to meet him there. The Defendant was registered to an apartment on Dimond Ave. in Oakland with his probation officer in Alameda County.

The arrest warrant OPD officers executed on July 17 related to a March 21, 2025 burglary of a Shell gas station on Broadway Ave. in Oakland. Multiple suspects drove a vehicle through the front of the business and stole the business safe. One of the suspect vehicles was a black Mercedes sedan with no plates or switched plates. Using Flock data, surveillance footage, and ping location data, OPD determined that the Defendant drove the suspect Mercedes sedan. That Mercedes was associated with the 17th Ave. address. And OPD officers observed the Defendant and others from the burglary crew meet up outside that residence.

**b. The Defendant Has a Lengthy and Serious Criminal History**

The Defendant has a lengthy and increasingly dangerous criminal history. Most recently, in 2023, the Defendant was convicted of a burglary he committed in Salinas, California, and sentenced to

two years in jail and 18 months of probation.  In 2019, the Defendant was convicted of a felony related to a burglary in San Francisco and sentenced to 29 days in jail and three years' probation.  In 2018, the Defendant was convicted of receiving stolen property and obstructing a public officer, in relation to a burglary in San Jose, California, and sentenced to 108 days in jail and three years' probation.  In 2016, the Defendant was convicted of second degree burglary for a burglary in Santa Clara County, California, and sentenced to 60 days in jail and three years' probation.  In 2015, the Defendant was convicted of second degree burglary for a burglary in Redwood City, California, and sentenced to 120 days in jail and three years' probation.  Also in 2015, the defendant was convicted for a burglary in Oakland and sentenced to one day in jail and three years of probation.  The Defendant incurred three convictions in 2014: one for a burglary in San Francisco, for which he was sentenced to four days in jail and three years' probation; one for a burglary in Oakland for which he was sentenced to one day in jail and three years of probation; and one for possession of drugs for which he was sentenced to two days in jail and three years' probation.  In 2013, the Defendant was convicted for possessing drugs in Nevada.

The Defendant has been arrested dozens of times since 2013, for everything from drug possession and drug trafficking, obstructing law enforcement, receipt of stolen property, to dozens of burglaries.  Many of the Defendant's convictions and arrests involve him fleeing from law enforcement and at times engaging in dangerous vehicle and foot pursuits.  Notably, the Defendant's conduct appears to have escalated in the past decade.  The 2014 and 2015 burglaries related to vehicle break-ins and stolen property, admittedly involving thousands of dollars of stolen property and at times using victims' credit cards.  The 2023 conviction and the 2025 arrest, however, involve the burglary of businesses by the Defendant and a burglary crew, posing even greater danger to the community.

The Defendant has been on some form of probation or supervision for most of the past 13 years yet has continuously violated his probation.  A bench warrant has been issued, and he has failed to appear in court at least twice.  The Defendant has repeatedly fled from law enforcement.

## III.    LEGAL STANDARD

Under the Bail Reform Act of 1984, as amended, the Court *must* detain a defendant pretrial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the

GOVERNMENT'S DETENTION MEMORANDUM     5
26-CR-191 AMO

community." 18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary for the government to prove both.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence.  *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)."  *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).  Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## IV.     DUPREE'S CONTINUOUS CRIMINAL CONDUCT AND DISREGARD FOR PROBATION CONDITIONS SHOW HE IS A DANGER AND A FLIGHT RISK

The United States submits that no condition or combination of conditions will protect the public and ensure the Defendant appearance for court should he be released from custody.

### a.  The Defendant's History and Characteristics Weigh in Favor of Detention

The history and characteristics of the Defendant weigh heavily in favor of detention.  The Defendant's unabated criminal conduct, including obstructive conduct and fleeing from law enforcement, demonstrates that he poses a grave danger to the community and that he is unlikely to comply with court orders and conditions of supervision or release.

The Defendant not only has a conviction for obstructing law enforcement; in addition, many of his arrests and other convictions involve fleeing from law enforcement in vehicles or on foot.  The Defendant is determined not to get caught.  And despite the restrictions of probation, the Defendant continued to engage in burglaries and to acquire firearms.

The seriousness of the Defendant's conduct has escalated over the past decade—from solo

GOVERNMENT'S DETENTION MEMORANDUM     6
26-CR-191 AMO

vehicle burglaries to burglaries of stores with a whole burglary crew. The Defendant is more dangerous today than he was ten years ago, and now he is also armed.

The Defendant has already served several custodial terms. The only lesson he apparently learned from his prior sentences is that there are few consequences to his criminal conduct. The Defendant continues to engage in criminal conduct and most recently was ready to engage in that conduct with a whole cache of weapons. This factor weighs heavily in favor of detention.

### b. The Nature and Circumstances of the Offense Charged Weigh in Favor of Detention

That someone's with this Defendant's criminal history and penchant for burglarizing innocent people should have a large cache of weapons is terrifying. The Defendant has incurred several felony convictions and been sentenced to over a year in prison. He no doubt knew he was prohibited from having a single firearm—much less six firearms and loads of ammunition, including short barrel rifles, a stolen firearm, and firearms that have been used in shootings. Perhaps most egregiously, these firearms and ammunition were left unsecured within ready reach of children. This factor weighs heavily in favor of detention.

### c. The Weight of the Evidence Against the Defendant Is Overwhelming

The evidence against the Defendant is overwhelming. The Defendant and his minor children were the only occupants of the residence. Ms. Banks resides in Fairfield and disavowed any knowledge or ownership of the firearms. Ms. Dupree admits in the Pretrial Report to residing on Porter St. in Oakland. Neither Ms. Banks nor Ms. Dupree have a violent criminal history involving firearms. Safe to say the firearms did not belong to the three-year-old and ten-year-old children on site during the search. The firearms and ammunition belonged to the Defendant. This factor too weighs in favor of detention.

### d. The Circumstances in the Community Weigh in Favor of Detention

The Defendant's illegal possession of firearms helps to fuel the wave of gun violence that is ravaging Oakland. The proliferation of illegal firearms amplifies the issue of violent crime, as robberies, burglaries, domestic violence incidents, or even routine altercations like road rage incidents carry the potential to become deadly when the participants are armed. Illegal firearms are also central to the challenge of gang violence, with groups of young armed people too often turning residential neighborhoods into combat zones.

GOVERNMENT'S DETENTION MEMORANDUM    7
26-CR-191 AMO

Harrowing statistics underscore the damage illegal firearms inflict on Oakland.  In 2025, the city suffered 67 homicides, at a rate of 15 homicides per 100k residents.  This homicide rate is *five times* the rate of San Francisco, and also substantially higher than neighboring cities in Berkeley and San Leandro.



| City | 2025 Population | Homicides 2025 | Homicides (per 100k) |
|---|---|---|---|
| *Oakland* | *444,196* | *67* | *15* |
| San Francisco | 826,079 | 28 | 3 |
| Los Angeles | 3,874,000 | 230 | 6 |
| Berkeley | 123,195 | 1 | 0.8 |
| San Leandro | 86,587 | 3 | 3.5 |
| San Jose | 993,000 | 24 | 2.4 |

It is not a mystery why Oakland has suffered so many more homicides than its neighbors.  It is in large part because of illegal firearms.  Of the 67 homicides in 2025, 65 of them were committed with a firearm, and only 2 involved some other means.

And the problem is not limited to murders.  There were 350 individuals who were shot in 2025, many suffering gruesome injuries with lifelong impacts.  The year 2025 also saw 1,674 robberies and 2,950 aggravated assaults in 2025.  As with homicides, Oakland suffers robbery and aggravated assaults at a much higher rate when compared with its neighbors.  And a substantial portion of these violent crimes also involved firearms.  Indeed, these violent confrontations, when mixed with illegally possessed firearms, all too often escalate into a shooting or a murder.

Nor has the problem abated in 2026.  Through only the first quarter of 2026, Oakland has already suffered 13 homicides, 374 robberies (102 involving firearms), 588 aggravated assaults, and 53 assaults

GOVERNMENT'S DETENTION MEMORANDUM    8
26-CR-191 AMO

with a firearm (including shootings and injuries by firearms). These statistics are all the more staggering considering that, often, the most violent time of the year are the summer months.

This is also not a problem that is limited to people already involved in criminal activity. Every resident of Oakland is made less safe by these illegal guns. Innocent bystanders uninvolved in criminal activity have been maimed and killed. For example, in 2021, two-year old Jasper Wu was shot and killed in his car seat in his family vehicle when gang members engaged in a shootout on I-880. And in March 2026, an innocent 33-year-old middle school teacher, Latetia Bobo, was murdered at a mass shooting at a night club in Oakland.

These tragedies and grim statistics are astounding, and they are unacceptable. Oakland has suffered enough. The proliferation of illegal firearms is not a trivial matter, but a direct threat to the safety of the community.

**e. The Defendant's Proposed Custodians and Sureties Exercise No Moral Suasion**

This Court is entitled to and should inquire whether the proposed sureties will have moral suasion over the Defendant. *See United States v. Melville*, 309 F. Supp. 824, 826–27 (S.D.N.Y. 1970) ("The Court is entitled to have a moral as well as a financial assurance . . . of the defendant's appearance in Court when required . . . . The function of bail is not to purchase freedom for the defendant but to provide assurance of his reappearance after release on bail."); *see also*, *United States v. Batista*, 163 F.Supp.2d 222 (S.D.N.Y. 2001) (stating that "a defendant who presents as suretors some individuals with moral suasion and others who are financially responsible may satisfy the requirements of bail"); *United States v. Hammond*, 204 F.Supp.2d 1157, 1166–67 (E.D.Wis. 2002) (stating that the court may consider whether the person posting the property has sufficient "moral suasion" over the defendant to ensure his appearance).

Here, the Defendant's mother, Ms. Dupree, has been arrested 18 times herself since 1993. She has prior convictions for forgery and possessing drugs, and she was convicted for making a false insurance claim as recently as 2020. The Defendant's mother has also been in the Defendant's life for the duration of his unabated crime spree. She has not been able to stop him from living a life of crime thus far, and there is no reason to believe she would be able to exercise moral suasion over him now, especially given her own convictions related to fraud and dishonestly.

Ms. Banks was at the apartment with her two children when the firearms were found. She either did not know about the firearms and the Defendant's criminal conduct, and thus it is unclear how she would discover any violations by the Defendant moving forward. Or worse, she did know about the firearms and permitted her children to be in the apartment. In either scenario, she does not have moral suasion over the Defendant. She has also engaged in criminal conduct herself, including having a bench warrant issued for her arrest in 2025. Notably Ms. Bank's criminal history is also not violent or related to firearms, but a custodian or surety should be a law abiding citizen in any event. Neither Ms. Dupree nor Ms. Banks are appropriate sureties.

Pretrial recommends that the Defendant reside at the halfway house; but the Defendant would be able to simply walk out of the halfway house, as many defendants do. He is too dangerous and too great a flight risk for halfway house placement. Additionally, the charges brought against the Defendant are the most serious he has faced to date. He has incentive to abscond, and the government believes that he will if he is released, to the great detriment and risk of the community.

**V.      CONCLUSION**

The Court should order the Defendant detained pending trial there are no conditions that will reasonably assure his appearance at court proceedings or ensure the safety of the community.

DATED: May 11, 2026                                 Respectfully submitted,

                                                    CRAIG H. MISSAKIAN
                                                    United States Attorney


                                                         _/s/ Ivana Djak_
                                                    IVANA DJAK
                                                    Assistant United States Attorney

97

GOVERNMENT'S DETENTION MEMORANDUM     10
26-CR-191 AMO